**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (AKRON)**

| | |
|---|---|
| Wachovia Dealer Services, Inc., fka<br>  WFS Financial, Inc.<br>23 Pasteur<br>Irvine, CA 92603,<br><br>     Plaintiff,<br><br>  vs.<br><br>Courtesy Auto World of Alliance, Inc.<br>dba Courtesy Kia of Alliance<br>2209 West State Street<br>Alliance, OH  44601<br><br>     Defendant. | Case No.<br><br>**COMPLAINT**<br><br>Charles C. Butler (0058652)<br>Bish, Butler & Thompson, Ltd.<br>1210 West High Street<br>Bryan, Ohio  43506<br>Telephone:  (419)636-5666<br>Telecopier:  (419)636-3919<br>email butler@fountaincitylaw.com<br><br>Attorneys for Plaintiff |

**Jurisdiction**

1. Plaintiff is a corporation organized and existing under the laws of the State of California with its principal place of business in a state other than Ohio. Defendant is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio. The amount in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars. Jurisdiction is therefore proper under 28 U.S.C. § 1332.

**Venue**

2. Plaintiff incorporates by reference all allegations contained in paragraph 1 above as if fully rewritten herein.

3. The claims arise based on acts or omissions that occurred in Summit County, Ohio and/or Stark County, Ohio. Venue is therefore proper in this Court.

**Parties**

4. Plaintiff, Wachovia Dealer Services, Inc. (f/k/a WFS Financial, Inc.) ("Wachovia") is a corporation organized and existing under the laws of the State of California and qualified to do business within the State of Ohio. Wachovia is a financial institution and its business includes financing customers for motor vehicle purchases. Defendant, Courtesy Auto World of Alliance, Inc. (d/b/a Courtesy Kia and d/b/a Courtesy Kia of Alliance) ("Courtesy") is corporation organized and existing under the laws of the State of Ohio. At all relevant times, Courtesy was a dealer of motor vehicles.

**Introduction**

5. Wachovia financed customers who purchased motor vehicles from Courtesy. As part of these transactions, Courtesy had obligations to ensure that Wachovia had a perfected security interest in the motor vehicles that were the subject of the transactions. In order to meet its obligations, Courtesy was required to obtain titles to the motor vehicles free and clear of other liens. This necessarily required Courtesy to pay off any other existing liens on the vehicles. Courtesy was then required to file applications for certificates of title in the names of the customers and ensure that Wachovia's liens were properly noted on the certificates of title. Once this had been accomplished, the original certificates of title should have been forwarded to Wachovia

and memoranda of title should have been given to the customers so they could obtain registrations for the vehicles. This Complaint arises out of Courtesy's failure to meet its obligations to Wachovia.

**General Allegations**

6. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 5 above as if fully rewritten herein.

7. Since approximately March 3, 1998, Wachovia has had a contractual relationship with Courtesy.

8. As part of the contractual relationship, Wachovia financed a number of transactions in which customers purchased vehicles from Courtesy.

9. In these transactions, Courtesy would enter into a retail installment contact with the customer who is purchasing the motor vehicle. Courtesy would then assign the contract to Wachovia. Wachovia did not deal directly with the customers.

10. Wachovia financed the transactions involving the motor vehicles listed in Exhibit 1 attached to and incorporated into this Complaint (the "Subject Transactions").

11. In connection with Subject Transactions, Wachovia paid to Courtesy the amounts listed on Exhibit 1 in the "Amount" column. The total amount paid by Wachovia to Courtesy in the Subject Transactions is $554,674.17.

12. On information and belief, Courtesy has failed to pay off the existing liens on many of the vehicles in the Subject Transactions.

13. Courtesy had an obligation to obtain certificates of title in the names of the purchasers of the vehicles in the Subject Transactions.

14. Courtesy has failed to obtain certificates of title in the names of the purchasers of the vehicles in the Subject Transactions.

15. Courtesy had an obligation to perfect and protect Wachovia's security interest in the vehicles in the Subject Transactions by noting Wachovia's lien on the certificates of title and forwarding the original certificates of title to Wachovia.

16. Courtesy has failed to note Wachovia's lien on the certificates of title and has failed forward the certificates of title to Wachovia for the Subject Transactions.

17. The "Aged" column on Exhibit 1 attached hereto, shows the number of days that have passed since each Subject Transaction as of January 23, 2009. As shown on Exhibit 1, the amount of time since the Subject Transactions is between 69 and 170 days as of January 23, 2009.

18. As of the date of this Complaint, Wachovia still has not received the certificates of title evidencing Wachovia's liens for the Subject Transactions.

19. In connection with some customer purchases of motor vehicles, Courtesy also sold warranty products.

20. The cost of the warranty products was part of the transaction financed by Wachovia.

21. On information and belief, there are a number of occasions in which Wachovia provided funds to Dealer to finance customers' purchases of warranty products that were never received by the customer or for which payment was never made by Dealer.

22. In connection with some customer purchases of motor vehicles, Courtesy sold other warranty or insurance-related products.

4

23. Courtesy had agreed to refund a portion of the cost of these products to Wachovia in the event that the products were terminated before the expiration of the term (i.e. the customer paid off the contract early or cancelled the product.).

24. Courtesy has failed to refund amounts due to Wachovia for products that were terminated early.

## COUNT I
## Breach of Contract
(Dealer Agreement)

25. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 24 above as if fully rewritten herein.

26. Since on or about March 3, 1998, Wachovia and Courtesy have had a contractual relationship. The exact language of the contracts between the parties has changed several times but the basic obligations of the dealer have remained same.

27. The most recent contract was executed on or about February 20, 2008 (the "Dealer Agreement"). A true and accurate copy of the Dealer Agreement is attached to this Complaint as Exhibit 2.

28. Paragraph 5 of the Dealer Agreement states in part:

As to each Contract offered and sold by Dealer to the Company, Dealer agrees and does hereby warrant, represent, and covenant that:
…

b) the Contract covers goods and services owned or provided by Dealer free and clear of all liens, security interests, claims or encumbrances;

c) Dealer has the authority to sell and assign the Contract free and clear of all liens and encumbrances;

…

i) the buyer is the registered owner of the vehicle;

5

…

q) Dealer has secured and perfected for Company a security interest in the vehicle free and clear of all other liens and encumbrances, and will deliver to the Company evidence satisfactory to the Company of such security interest within thirty (30) days of the date of the Contract;

…

ff) within thirty (30) days from the Contract date, or less than thirty (30) if required by the applicable state motor vehicle department law and regulations, in order for perfection of the Company's security interest to relate back to the contract date, Dealer will apply to the state motor vehicle division or agency for a valid certificate of title evidencing the buyer's ownership of the goods described in the Contract and the Company's first priority lien on those goods;

…

Dealer unconditionally guarantees payment and performance of all Contracts with respect to which any one or more of the foregoing warranties, representations or covenants are breached or are false. If any of the forgoing warranties, representations, or covenants are breached by Dealer or if buyer and/or co-signer file a lawsuit or otherwise claim that Dealer has engaged in any conduct which constitutes a breach of this Dealer Agreement (without regard to whether the claims of buyer or co-signer have any merit), Dealer agrees unconditionally to repurchase any Contract upon demand for the full amount unpaid on the Contract (less any refunds of unearned finance charges).

29. Many of the vehicles had existing liens at the time of the Subject Transactions. On information and belief, Courtesy breached the Dealer Agreement by, among other things, failing to pay off the prior liens during the Subject Transactions.

30. Additionally, Courtesy breached the Dealer Agreement by, among other things, failing to obtain certificates of title in the names of purchasers and evidencing Wachovia's first lien on the motor vehicles.

31. As a result of Courtesy's breach of the Dealer Agreement, Wachovia has incurred damages of $554,674.17 as of January 23, 2009 and will continue to incur

additional damages because its security interest has not been perfected in the Subject Transactions.

## COUNT II
## Breach of Contract
(Limited Agency Agreement)

33. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 31 above as if fully rewritten herein.

33. On or about March 7, 2000, Wachovia and Courtesy entered into a Limited Agency Agreement.

34. A true and accurate copy of the Limited Agency Agreement is attached to this Complaint as Exhibit 3.

35. Section 2 of the Limited Agency Agreement states in part:

With respect to all Finance Documents forwarded to WFS, and the related Loan, Dealer represents to WFS that:
…
(k) no other person shall have any lien, judgment, encumbrance, or other interest in the Finance Documents, and except for any ownership interest of Borrower shown on any certificate of title, no other person shall have any lien, judgment, encumbrance, or other interest in the good and services financed by the related Loan;
…
(p) if any filing or recording is necessary or required by WFS to perfect any lien or security interest in connection with any Loan, Dealer has timely filed or recorded within 20 days of the date the Loan was accepted by WFS any document necessary to perfect such lien or security interest for WFS as against any other persons (including without limitation any bankruptcy trustee) in accordance with applicable law; and Dealer will deliver to WFS evidence satisfactory to WFS of such security interest;
…
(s) Dealer agrees and warrants that any goods described in all Finance Documents, title to which is required to be evidenced by a certificate of title issued by the state motor vehicle division or agency, or any other bureau, agency or jurisdiction, prior to WFS's disbursement of the loan proceeds pursuant to Section 3 shall (a) have valid certificates of title issued thereof for which Dealer shall apply or cause to be made, evidencing each borrower's ownership of the

7

goods and that WFS's lien to secure payment of the Loan is noted on such title as a valid, first lien on the goods;…(c) Dealer agrees to furnish evidence of such title or application and insurance with the WFS shown as loss payee to WFS at the time of disbursement of the loan proceeds.

…

Dealer unconditionally guarantees payment and guarantee of Title performance of all Loans with respect to any one or more of the foregoing warranties or representations are breached or false.

36. Many of the vehicles had existing liens at the time of the Subject Transactions. On information and belief, Courtesy breached the Limited Agency Agreement by, among other things, failing to pay off the prior liens during the Subject Transactions.

37. Courtesy also breached the Limited Agency Agreement by, among other things, failing to obtain certificates of title in the names of purchasers and failing to take the necessary steps to perfect Wachovia's first lien on the motor vehicles.

38. As a result of Courtesy's breach of the Limited Agency Agreement, Wachovia has incurred damages of $554,674.17 as of January 23, 2009 and will continue to incur additional damages because its security interest has not been perfected in the Subject Transactions.

## COUNT III
### Breach of Contract
### Specific Performance

39. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 38 above as if fully rewritten herein.

Section 5 of the Dealer Agreement states in part:

Dealer unconditionally guarantees payment and performance of all Contracts with respect to which any one or more of the foregoing warranties, representations or covenants are breached or are false. If any of the forgoing warranties, representations, or covenants are breached by Dealer or if buyer and/or co-signer file a lawsuit or otherwise claim that

8

Dealer has engaged in any conduct which constitutes a breach of this Dealer Agreement (without regard to whether the claims of buyer or co-signer have any merit), Dealer agrees unconditionally to repurchase any Contract upon demand for the full amount unpaid on the Contract (less any refunds of unearned finance charges).

40. As explained above, Courtesy breached various warranties and representations in the Dealer Agreement. Despite a demand by Wachovia, Courtesy has refused and continues to refuse to repurchase the contracts and pay off the remaining debt related to the Subject Transactions.

41. As a result of Courtesy's breach of the Dealer Agreement, Wachovia has incurred damages because its security interest has not been perfected in the Subject Transactions.

42. Wachovia is entitled to specific performance of the repurchase provisions of the Dealer Agreement.

## COUNT IV
### Breach of Statutory Duty
(Ohio Revised Code 4505.06)

43. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 42 above as if fully rewritten herein.

44. At all relevant times, Courtesy was a "motor vehicle dealer" as that term is used in Section 4505.06 of the Ohio Revised Code.

45. At all relevant times, Wachovia was a "secured party" as that term is used in Section 4505.06 of the Ohio Revised Code.

46. Section 4505.06 of the Ohio Revised pertains to the procedure for obtaining a motor vehicle certificate of title. Section 4505.06(A) states in part:

> (4) In the case of the sale of a motor vehicle to a general buyer or user by a dealer, by a motor vehicle leasing dealer selling the motor vehicle to the lessee or, in a case in which the leasing dealer subleased the motor vehicle, the sublessee, at the

9

end of the lease agreement or sublease agreement, or by a manufactured home broker, the certificate of title shall be obtained in the name of the buyer by the dealer, leasing dealer, or manufactured home broker, as the case may be, upon application signed by the buyer. The certificate of title shall be issued, or the process of entering the certificate of title application information into the automated title processing system if a physical certificate of title is not to be issued shall be completed, within five business days after the application for title is filed with the clerk. If the buyer of the motor vehicle previously leased the motor vehicle and is buying the motor vehicle at the end of the lease pursuant to that lease, the certificate of title shall be obtained in the name of the buyer by the motor vehicle leasing dealer who previously leased the motor vehicle to the buyer or by the motor vehicle leasing dealer who subleased the motor vehicle to the buyer under a sublease agreement.

(5)(a)(i) If the certificate of title is being obtained in the name of the buyer by a motor vehicle dealer or motor vehicle leasing dealer and there is a security interest to be noted on the certificate of title, the dealer or leasing dealer shall submit the application for the certificate of title and payment of the applicable tax to a clerk within seven business days after the later of the delivery of the motor vehicle to the buyer or the date the dealer or leasing dealer obtains the manufacturer's or importer's certificate, or certificate of title issued in the name of the dealer or leasing dealer, for the motor vehicle. Submission of the application for the certificate of title and payment of the applicable tax within the required seven business days may be indicated by postmark or receipt by a clerk within that period.

(ii) Upon receipt of the certificate of title with the security interest noted on its face, the dealer or leasing dealer shall forward the certificate of title to the secured party at the location noted in the financing documents or otherwise specified by the secured party.

(iii) A motor vehicle dealer or motor vehicle leasing dealer is liable to a secured party for a late fee of ten dollars per day for each certificate of title application and payment of the applicable tax that is submitted to a clerk more than seven business days but less than twenty-one days after the later of the delivery of the motor vehicle to the buyer or the date the dealer or leasing dealer obtains the manufacturer's or importer's certificate, or certificate of title issued in the name of the dealer or leasing dealer, for the motor vehicle and, from then on, twenty-five dollars per day until the application and applicable tax are submitted to a clerk.

(b) In all cases of transfer of a motor vehicle, the application for certificate of title shall be filed within thirty days after the assignment or delivery of the motor vehicle. If an application for a certificate of title is not filed within the period specified in division (A)(5)(b) of this section, the clerk shall collect a fee of five dollars for the issuance of the certificate, except that no such fee shall be required

from a motor vehicle salvage dealer, as defined in division (A) of section 4738.01 of the Revised Code, who immediately surrenders the certificate of title for cancellation. The fee shall be in addition to all other fees established by this chapter, and shall be retained by the clerk. The registrar shall provide, on the certificate of title form prescribed by section 4505.07 of the Revised Code, language necessary to give evidence of the date on which the assignment or delivery of the motor vehicle was made.

47. Courtesy has breached its statutory obligations related to the Subject Transactions by, among other things, failing to obtain certificates of title in the names of buyers, failing to file the application for certificates title within the required time limits, failing to ensure that Wachovia's lien is noted on the certificates of title, and failing to forward the certificates of title to Wachovia.

48. As a result of Courtesy's breach of its statutory obligations, Wachovia has incurred damages and is entitled to statutory damages. For each one of the Subject Transactions, Wachovia is entitled to $10.00 for each day that each application for certificate of title is filed more than seven days after the contract date but less than twenty-one days after the contract date, and $25.00 per day for each day thereafter

## COUNT V
### Breach of Fiduciary Duty

49. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 48 above as if fully rewritten herein.

50. After Wachovia paid Courtesy the funds for the vehicles in the Subject Transactions, Courtesy was in a position of trust with respect to the funds and vehicles involved, thus creating a fiduciary relationship between Courtesy and Wachovia.

51. As part this fiduciary relationship, Courtesy was required to pay off any existing liens on the vehicles in the Subject Transactions and take other actions necessary to ensure that Wachovia had valid, first liens on vehicles.

52. On information and belief, Courtesy breached its fiduciary duty to Wachovia by, among other things, failing to pay off existing liens on the vehicles in the Subject Transactions.

53. Courtesy also breached its fiduciary duty to Wachovia by failing to obtain certificates of title in the names of purchasers and failing to take the necessary steps to perfect Wachovia's first lien on the motor vehicles. Courtesy, by and through its employees, acted willfully and with malice.

54. As a result of Courtesy's breach of its fiduciary duty, Wachovia has incurred damages of $554,674.17 as of January 23, 2009 and will continue to incur additional damages because its security interest has not been perfected in the Subject Transactions. Additionally, Wachovia seeks punitive damages as allowed by law.

## COUNT VI
## Fraud

55. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 54 above as if fully rewritten herein above as if fully set forth herein.

56. At the time of the Subject Transactions, Courtesy failed to inform them that it was (1) unwilling or unable to obtain certificates of title for the vehicles in the names of the buyers; (2) unwilling or unable to pay off existing loans on the vehicles; and (3) unwilling or unable to take actions necessary to ensure that Wachovia would have valid, first liens on the vehicles.

57. In reliance on these omissions, Wachovia financed the Subject Transactions and paid the purchase prices to Courtesy.

58. Wachovia would not have financed the Subject Transactions if it had known Courtesy was (1) unwilling or unable to obtain certificates of title for the vehicles

12

in the names of the buyers; (2) unwilling or unable to pay off existing loans on the vehicles; and (3) unwilling or unable to take actions necessary to ensure that Wachovia would have valid, first liens on the vehicles.

59. As a result of Courtesy's misrepresentations and omissions, Wachovia has incurred damages of $554,674.17 as of January 23, 2009 and will continue to incur additional damages because its security interest has not been perfected in the Subject Transactions. Courtesy's fraudulent misrepresentations and omissions were made willfully and with actual malice and Wachovia therefore seeks punitive damages as allowed by law.

## COUNT VII
### Conversion

60. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 59 above as if fully rewritten herein.

61. Wachovia financed the Subject Transactions based on the representations of Courtesy.

62. Courtesy knew there were existing liens on many of the vehicles in the Subject Transactions.

63. Courtesy took possession of the funds from Wachovia that were paid in anticipation of the Subject Transactions.

64. On information and belief, Courtesy gave the buyers possession of the vehicles in the Subject Transactions before paying off the existing liens and before taking the necessary actions to perfect Wachovia's security interest in the vehicles.

13

65. By taking the funds from Wachovia without perfecting Wachovia's security interest, Courtesy has converted such funds in the Subject Transactions. Courtesy, by and through its employees, acted willfully and with malice.

66. As a result of this conversion, Wachovia has incurred damages of $554,674.17 as of January 23, 2009 and will continue to incur additional damages because its security interest has not been perfected in the Subject Transactions. Additionally, Wachovia seeks punitive damages as allowed by law.

## COUNT VIII
## Unjust Enrichment

67. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 66 above as if fully rewritten herein.

68. Wachovia conferred benefits on Courtesy in the form of funds for the Subject Transactions.

69. Wachovia conferred these benefits on Courtesy with the reasonable expectation that Courtesy would pay off any existing liens on the vehicles in the Subject Transactions, and with the expectation that Courtesy would obtain certificates of title in the names of the buyers with Wachovia's lien noted as a valid first lien, and with the expectation that Courtesy would forward the original certificates of title to Wachovia.

70. On information and belief, Courtesy has failed to pay off the existing liens, has failed to obtain certificates of title in the names of the buyers with Wachovia's lien noted as a valid, first lien, and has failed to forward the original certificates of title to Wachovia.

71. As a result of the foregoing, Courtesy has been unjustly enriched.

72. As result of Courtesy's unjust enrichment, Wachovia has incurred damages of $554,674.17 as of January 23, 2009 and will continue to incur additional damages because its security interest has not been perfected in the Subject Transactions.

## COUNT IX
### Injunctive Relief/Specific Performance

73. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 72 above as if fully rewritten herein.

74. Under the Dealer Agreement and the Limited Agency Agreement, Courtesy agreed to obtain certificates of title in the names of the buyers with Wachovia's lien noted as a valid, first lien.

75. There is no adequate remedy at law and Wachovia will suffer irreparable harm if mandatory injunction is not issued compelling Courtesy to obtain certificates of title in the names of the buyers with Wachovia's lien noted as a valid, first lien.

76. There is a substantial likelihood that Wachovia will prevail on the merits of this matter; that it will suffer injury if Courtesy is not compelled to obtain certificates of title in the names of the buyers with Wachovia's lien noted as a valid, first lien and tender the titles to Wachovia; there will be no substantial harm to others if the relief requested is granted; and it is in the public interest to grant the relief requested.

## COUNT X
### Breach of Contract
### Warranty Money Due

77. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 76 above as if fully rewritten herein.

78. On some occasions, Courtesy sold warranty products in connection with the sale of vehicles. These warranty products were provided by GE Warranty. The cost of the warranty was part of the contract financed by Wachovia.

79. When such warranty products were sold, Courtesy agreed to send payment to GE Warranty.

80. On two occasions, Courtesy's payment for such warranty products was made by check and the checks were returned for insufficient funds.

81. There are other occasions on which Courtesy failed to forward any payment for warranty products that Dealer sold to customers.

82. On information and belief, there are a number of occasions in which Wachovia provided funds to Courtesy to finance customers' purchases of warranty products that were never received by the customer or for which payment was never made by Courtesy.

83. As a result of Courtesy's breach of contract, Wachovia has incurred damages of $61,511.16 as of January 15, 2009 and will continue to incur additional damages.

### COUNT XI
### Breach of Contract
### Rebate Money Due

84. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 83 above as if fully rewritten herein.

85. On a number of occasions, Wachovia financed vehicle purchases that included other products such as warranties or insurance products.

86. Courtesy agreed that if these products were cancelled early (i.e. the contract was paid off early, the customer cancelled the product, or the product was otherwise terminated), Courtesy would rebate to Wachovia a certain amount of the funds associated with the purchase of those products.

87. On a number of occasions, Courtesy has failed to rebate amounts due to Wachovia after the products were terminated.

88. As a result of Courtesy's breach of contract, Wachovia has incurred damages of $17,163.75 as of January 15, 2009 and will continue to incur additional damages.

## COUNT XII
### Conversion
### (Failure to Pay Off Wachovia's Liens on Trade-In Vehicles)

89. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 88 above as if fully rewritten herein.

90. On four occasions, Wachovia customers brought their vehicles to Courtesy to trade in the vehicles and purchase another vehicle from Courtesy. These vehicles were a 2007 Chrysler PT Cruiser, a 2004 Chevrolet Silverado Truck, a 2005 Buick Rendezvous, and a 1998 Chevrolet Blazer (collectively the "Trade-in Vehicles").

91. On each of these Trade-in Vehicles, Wachovia had a valid security interest.

92. Courtesy accepted possession of the Trade-in Vehicles and sold the customers other vehicles from the Courtesy inventory.

93. Courtesy failed to pay off Wachovia's existing liens on the Trade-in Vehicles. In some of the transactions involving the Trade-in Vehicles, Courtesy sent checks to Wachovia but the checks were returned because there were insufficient funds.

94. By taking the Trade-in Vehicles without paying off Wachovia's security interest, Courtesy has converted the Trade-in Vehicles. Courtesy, by and through its employees, acted willfully and with malice.

95. As a result of this conversion, Wachovia has incurred damages of $49,829.38 and will continue to incur additional damages because its lien has not been paid off. Additionally, Wachovia seeks punitive damages as allowed by law.

WHEREFORE, Plaintiff Wachovia demands judgment against Courtesy as follows:

As to Count I, judgment in its favor in an amount in excess of $554,674.17, together with interest, costs, and attorney fees;

As to Count II, judgment in its favor in an amount in excess of $554,674.17, together with interest, costs, and attorney fees;

As to Count III, specific performance of the Dealer Agreement in the form of an Order requiring Dealer to repurchase the Contracts for the Subject Transactions;

As to Count IV, statutory damages under Section 4505.06 of the Ohio Revised Code. For each one of the Subject Transactions, Wachovia seeks statutory damages of $10.00 for each day each application for certificate of title is filed more than seven days after the contract date but less than twenty-one days after the contract date, and $25.00 per day for each day thereafter, together with interest, costs, and attorney fees;

18

As to Count V, judgment in its favor in an amount in excess of $554,674.17, together with interest, costs, attorney fees, and punitive damages as allowed by law;

As to Count VI, judgment in its favor in an amount in excess of $554,674.17, together with interest, costs, attorney fees, and punitive damages as allowed by law;

As to Count VII, judgment in its favor in an amount in excess of $554,674.17, together with interest, costs, attorney fees, and punitive damages as allowed by law;

As to Count VIII, judgment in its favor in an amount in excess of $554,674.17, together with interests, costs, and attorney fees;

As to Count IX, a mandatory injunction and specific performance in the form of an Order compelling Courtesy to obtain certificates of title in the names of the buyers with Wachovia's lien noted as a valid, first lien, and tender the titles to Wachovia;

As to Count X, judgment in its favor in an amount in excess of $61,511.16, together with interest, costs, and attorney fees;

As to Count XI, judgment in its favor in an amount in excess of $17,163.75, together with interest, costs, and attorney fees;

As to Count XII, judgment in its favor in an amount in excess of $49,829.38, together with interest, costs, attorney fees, and punitive damages as allowed by law;

As to all Counts, any and all other relief to which Wachovia is entitled, either at law or in equity, and all at the cost of Courtesy.

/s/ Charles C. Butler

Charles C. Butler (0058652)
Attorney for Plaintiff