IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (AKRON)

| | |
|---|---|
| Wachovia Dealer Services, Inc. | Case No.  5:09-cv-00323 |
| Plaintiff, | Judge:  Sara Lioi |
| vs. | **PLAINTIFF'S MOTION FOR A PRELIMINARY MANDATORY INJUNCTION AND REQUEST FOR HEARING** |
| Courtesy Auto World of Alliance, Inc., et al. | |
| Defendant. | Charles C. Butler (0058652)<br>Bish, Butler & Thompson, Ltd.<br>1210 West High Street<br>Bryan, Ohio  43506<br>Telephone:  (419)636-5666<br>Telecopier:  (419)636-3919<br>email butler@fountaincitylaw.com<br><br>Attorneys for Plaintiff |

Plaintiff, Wachovia Dealer Services, Inc., ("Wachovia") moves this Court under F.R.C.P 65 for a preliminary mandatory injunction compelling Defendants Courtesy Auto World of Alliance, Inc. ("Courtesy"), Akron Auto Auction, Inc. ("Akron Auto Auction") and Fink's Used Cars ("Fink's") to take the following actions pending further order of the Court:  (1) release any liens that they may have on vehicles identified in Exhibits 4 and 5 attached to the Amended Complaint; (2) obtain certificates of title in the names of the customers who purchased the vehicles from Courtesy Auto World of Alliance, Inc. ("Courtesy") with Wachovia's liens noted on the certificates of title; and (3) deliver to Wachovia the original certificates of title in the names of the customers.

1

Plaintiff requests that the Court set a date for a hearing on this motion and determine the form and extent of the notice of the hearing to be given the Defendants, and for all such other and proper relief as may seem to the Court right and proper.

As the attached Memorandum explains, Wachovia has a strong likelihood of success on the merits; Wachovia would suffer irreparable harm without the mandatory injunction; the mandatory injunction would not cause substantial harm to others; and the public interest would be served by issuance of the mandatory injunction.

Respectfully submitted,

/s/Charles C. Butler_____
Charles C. Butler (0058652)
Attorney for Plaintiff Wachovia
Dealer Services, Inc.

**Memorandum**

**A.     Facts**

The facts of this case are more fully set forth in the Amended Complaint that was filed on March 25, 2009.  The following is a brief summary of the facts specific to this motion.

Defendant Courtesy is a dealer in the business of selling motor vehicles to the public.  Courtesy obtained the vehicles identified in Exhibits 1 and 2.  Courtesy then offered these vehicles for sale to the public.

Wachovia is in the business of financing customer purchases of motor vehicles.  In a typical transaction, the customer purchases a vehicle from a dealer and the customer signs a retail installment sales contract.  The contract is then assigned to Wachovia, which provides the purchase funds to the dealer.  Wachovia then takes a security interest in the vehicle.  The dealer obtains a certificate of title in the name of the customer with Wachovia's lien noted on the certificate of title.  Once the certificate of title has been issued in the name of the customer, the customer can obtain license plates for the vehicle.  The original certificate of title is sent to Wachovia, which holds the certificate of title until the customer pays off the vehicle.

In the case at bar, Wachovia financed customer purchases from Courtesy of the vehicles identified in Exhibits 1 and 2.  The customers took possession of the vehicles and granted Wachovia a security interest in the vehicles but there were never any certificates of title issued in the names of the customers and Wachovia's liens were not noted on the certificates of title.

As to the vehicles identified in Exhibit 1, it seems that certificates of title have been obtained in the name of Courtesy or a related entity.  These certificates show a lien held by Akron Auto Auction.  The original certificates of title are apparently being held by Akron Auto Auction or Courtesy.  Akron Auto Auction alleges that it was not paid by Courtesy for the vehicles.

As to the vehicles identified in Exhibit 2, it seems that that the certificates of title have been obtained in the name of Fink's.  These certificates of title are apparently being held by Fink's, which also alleges that it was not paid by Courtesy for the vehicles.

Since the certificates of title have not been issued in the names of the customers, the customers have been unable to obtain permanent license plates for the vehicles. Additionally, since Wachovia's liens have not been noted on the certificates of title, Wachovia has been unable to perfect its security interests in the vehicles.  The preliminary mandatory injunction is therefore necessary to prevent irreparable harm to Wachovia.

As shown in the newspaper article attached hereto as Exhibit 3, there are currently pending criminal charges against Courtesy related to Courtesy's failure to obtain certificates of title.

**B.     Law and Argument**

In determining whether to grant this preliminary injunction, the court should consider the following factors:  (1) whether Wachovia has a strong likelihood of succeeding on the merits; (2) whether Wachovia would otherwise suffer irreparable harm; (3) whether issuance of the preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the preliminary

4

injunction.[1]  "These factors are not prerequisites to issuing an injunction but factors to be balanced."[2]  Each of these factors supports the issuance of the injunction in this case.

### 1. There is a strong likelihood that Wachovia will succeed on the merits.

The customers who purchased the vehicles from Courtesy were buyers in the ordinary course of business.  Under Ohio law, the customers took the vehicles free from any liens by Akron Auto Auction or Fink's.

In *Heartland Bank v. National City Bank*,[3] the Court of Appeals for the Tenth District of Ohio addressed issues similar to those in the case at bar.  In that case, Heartland Bank had an open-end credit arrangement with a car dealer known as Dublin Auto Sales ("Dublin").  As part of the arrangement, Dublin granted to Heartland Bank a security interest in Dublin's entire inventory.  Additionally, Heartland Bank financed Dublin's purchases of a 1997 Ford F-150 and a 1999 Jeep Cherokee.  Certificates of title were issued in Dublin's name with Heartland Bank noted as the first lienholder.  Heartland Bank took possession of the certificates of title for both vehicles.  Dublin offered both vehicles for sale to the public and customers then purchased the vehicles from Dublin with financing from National City Bank.  After the customers purchased the vehicles, certificates of title were issued in the names of the customers but Heartland Bank's lien was noted as a first lien and National City's lien was noted as a second lien.  Heartland Bank claimed it was never paid by Dublin for the vehicles.[4]

---

[1] *See United Food & Commercial Workers Union, Local 1099, et al. v. Southwest Ohio Regional Transit Authority,* 163 F.3d 341, 347 (6th Cir. 1998).
[2] *Id.*
[3] *Heartland Bank v. National City Bank,* 171 Ohio App.3d 132, 869 N.E.2d 746 (Ohio Ct. App. 10th Dist. 2007).
[4] *Id.* at ¶¶ 2-5.

Heartland Bank filed an action seeking a declaratory judgment that it was the first lienholder on the two vehicles. The trial court granted summary judgment in favor of National City Bank, holding that the security interests of Heartland Bank were terminated upon the sale of the vehicles.[5] In so holding, the trial court relied on Sections 4505.13(A)(2) and 1309.320(A) of the Ohio Revised Code.[6]

Section 4505.13(A)(2) of the Ohio Revised Code states:

Chapter 1309. of the Revised Code applies to a security interest in a motor vehicle held as inventory for sale by a dealer. The security interest has priority over creditors of the dealer as provided in Chapter 1309. of the Revised Code without notation of the security interest on a certificate of title, without entry of a notation of the security interest into the automated title processing system if a physical certificate of title for the motor vehicle has not been issued, or without the retention of a manufacturer's or importer's certificate.[7]

Section 1309.320(A) of the Ohio Revised Code states in pertinent part:

a buyer in the ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by the buyer's seller even if the security interest is perfected and the buyer knows of its existence.[8]

On appeal, Heartland Bank argued that other sections of the Ohio Revised Code applied rather than 4505.13(A)(2) and 1309.320(A).[9] The Tenth District disagreed with

---

[5] *Id.* at ¶ 10.
[6] *Id.* at ¶¶ 35-36.
[7] OHIO REV. CODE § 4505.13(A)(2).
[8] OHIO REV. CODE § 1309.320(A).
[9] Relying on *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 92 Ohio St.3d 513, 518, 751 N.E.2d 1019 (2001) ("*Saturn of Kings* "), Heartland argued that Section 4505.04(A) applied. As the Tenth District explained, however, the *Saturn of Kings* case required the Supreme Court to "consider the interplay between Ohio's adoption of Article 2 of the UCC, codified at R.C. Chapter 1302, and Ohio's Certificate of Motor Vehicle Title Law as embodied in R.C. Chapter 4505." *Id*. The "primary issue" before the Supreme Court of Ohio in *Saturn of Kings* was "whether a person may acquire legal ownership of a motor vehicle without transfer to that person of the vehicle's certificate of title." *Id.* at 515, 751 N.E.2d 1019. The case did not involve competing security interests or R.C. Chapter 1309. Heartland Bank also cited *First Merit Bank, N.A. v. Angelini,* 159 Ohio App.3d 179, 823 N.E.2d 485 (Ohio Ct. App. 3d Dist. 2004), which relied heavily on the *Saturn of Kings* case and Section 4505.13(B) of the Ohio Revised Code. As the Tenth District explained, however, R.C. 4505.13(B) specifically states that it is "subject to" 4505.13(A).

6

Heartland Bank, however, and held that under R.C. 4505.13(A)(2), the issue of competing security interests was governed by Chapter 1309.[10]  Further, under R.C. 1309.320(A), when the customers purchased the vehicles in the ordinary course of business, Heartland Bank's security interests in the vehicles were extinguished.[11]

Similarly, in the case at bar, the customers who purchased the vehicles from Courtesy were buyers in the ordinary course of business.  Any security interests that either Akron Auto Auction or Fink's had in the vehicles were extinguished when the customers purchased the vehicles from Courtesy.

Under R.C. 4505.13(A), R.C. 1390.320(A) and *Heartland Bank v. National City Bank,* there is strong liklihood that Wachovia will succeed in showing that its liens are superior to those of Akron Auto Auction and Fink's.

There is also a strong liklihood that Wachovia will prevail in its claims against Courtesy.  It cannot be disputed that Courtesy breached its contract with Wachovia by, among other things, failing to obtain certificates of title in the names of the customers with Wachovia's liens noted on the certificates of title.  This lawsuit is just one of many recent claims against Courtesy related to certificate of title issues. In addition to customer complaints filed with the local Better Business Bureau, there have been numerous customer complaints to the Ohio Attorney General.  Some customers have also recently filed lawsuits against Courtesy under the Ohio Consumer Sales Practices Act and there are currently pending criminal charges against Courtesy.

---

*Heartland Bank,* 171 Ohio App.3d 132 at ¶ 35.

[10] *Heartland Bank,* 171 Ohio App.3d 132 at ¶ 35.
[11] *Heartland Bank,* 171 Ohio App.3d 132 at ¶ 36.

### 2. Wachovia will suffer irreparable harm if the injunction is not issued.

Since no certificates of title have been issued in the names of the customers, the customers have been unable to obtain permanent license plates for the vehicles. And since Wachovia's liens have not been noted on the certificates of title, Wachovia does not have a perfected security interest in the vehicles. The vehicles are now arguably subject to any claims of the customers' other creditors. Additionally, if a customer defaults under the payment obligation, Wachovia's remedies are now limited. If Wachovia were to repossess one of the vehicles, it would be impossible for Wachovia to sell the vehicle without a certificate of title. If a vehicle is wrecked, Wachovia will not be guaranteed to receive any insurance proceeds.

### 3. The issuance of the preliminary mandatory injunction will not cause substantial harm to others.

Certainly Akron Auto Auction and Fink's will assert that they are entitled to be paid by Courtesy for the vehicles. Wachovia does not dispute this. The issue of payment will likely be determined later in this litigation. Meanwhile, no one has a perfected security interest in the vehicles. Akron Auto Auction and Fink's lost their security interests when the customers purchased the vehicles from Courtesy in the ordinary course of business.[12] And Wachovia cannot perfect its security interest until certificates of title are issued in the names of the customers. Akron Auto Auction, Fink's, and Courtesy will not be substantially harmed by the injunction because they all still have the opportunity to argue over payment for the vehicles.

---

[12] *See Heartland Bank,* 171 Ohio App.3d 132 (Ohio Ct. App. 10 Dist. 2007).

### 4. It will serve the public interest to issue the preliminary mandatory injunction.

There are many customers who have been unable to obtain license plates for their vehicles because Courtesy has failed to obtain certificates of title in the names of the customers. According to local newspaper articles and information on the Ohio Attorney General's website, these customers have filed numerous complaints with the local Better Business Bureau and the Ohio Attorney General's Office. Without proper license plates, the customers are forced to decide whether to drive the vehicles illegally or allow the vehicles to stay parked while they continue to make monthly payments. The longer this situation continues, the more likely it is that the customers will refuse to make their monthly payments. The likely result is more litigation. Many of the customers' frustrations could be resolved and the risk of further litigation could be minimized with the issuance of the preliminary mandatory injunction. It is therefore in the public interest to issue the injunction.

### C. Conclusion

For the foregoing reasons, Plaintiff Wachovia Dealer Services, Inc. requests that the Court issue a mandatory injunction compelling Courtesy, Akron Auto Auction, and Fink's to take the following actions pending further order of the Court: (1) release any liens that they may have on vehicles identified in Exhibits 1 and 2; (2) obtain certificates of title in the names of the customers who purchased the vehicles from Courtesy with Wachovia's liens noted on the certificates of title; and (3) deliver to Wachovia the original certificates of title in the names of the customers.

Respectfully submitted,


/s/Charles C. Butler
Charles C. Butler (0058652)
Attorney for Plaintiff Wachovia
Dealer Services, Inc.

**CERTIFICATE OF SERVICE**

  I certify that a copy of the foregoing Motion for Relief was sent by Ordinary U.S. Mail (unless served electronically pursuant to applicable service rules of the Electronic Case Filing Procedure) on April 15, 2009 to the following:

Michael A. Steel, Esq.
Goldman and Rosen, Ltd.
11 S. Forge St.
Akron, OH 44304
*Attorney for Courtesy Auto World of Alliance, Inc.*
Served electronically

Akron Auto Auction, Inc.
c/o Jeffrey Bailey
2471 Ley Drive
Akron, OH 44319
Served by Ordinary U.S. Mail

Scott D. Eickelberger
Kincaid, Taylor & Geyer
50 N. 4th Street
P.O. Box 1030
Zanesville, OH 43702-1030
*Attorney for Fink's Used Cars*
Served electronically

              /s/Charles C. Butler
              Charles C. Butler (0058652)