**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON (AKRON)**

| | | |
|---|---|---|
| Wachovia Dealer Services, Inc. fka  WFS Financial, Inc. | ) ) ) | Case No. 5:09-cv-00323 |
| Plaintiff, | ) ) | Judge: Sara Lioi |
| vs. | ) ) | **DEFENDANT AKRON AUTO AUCTION'S** |
| Courtesy Auto World of Alliance, Inc., et al. | ) ) ) | **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S REQUEST FOR PRELIMINARY MANDATORY** |
| Defendants. | ) | **INJUNCTION** |

**I.     Summary of Facts**

Richard Varner is the sole or majority shareholder of two entities: Courtesy Auto World of Alliance, Inc. dba Courtesy Auto World of Alliance and Courtesy C-P-D, Inc. (hereinafter collectively referred to as "Courtesy"). Courtesy is a motor vehicle dealer that sells vehicles to consumers. Courtesy obtained possession of motor vehicles from Akron Auto Auction, Inc. ("AAA") and Fink's Used Cars ("Fink"). Wachovia Dealer Services, Inc. ("Wachovia") is a financial institution that provides financing for customers who purchase motor vehicles.

To fully understand this matter, it is necessary to explain AAA's Registration and Floorplan Procedures. A new customer that wishes to sell its vehicles at AAA must complete an application with the Registration Department at AAA. See Affidavit of Rick Wakefield, attached hereto and incorporated herein as Exhibit "A." The new customer must pay a $20 registration fee and provide a copy of the following documents along with the signed application: BMV License, Vendor's License, Company Check, Signed Bank Authorization Form, the driver's license of each authorized representative, and a signed guaranty form. See *id.* Once registration is complete, the new customer will receive an Akron Auto Auction photo identification card and dealer code. See *id.* The new customer may reserve numbers for vehicles it wishes to sell at the auction and pay an entry fee of $15.00 for each vehicle. See *id.* The dealer auctions are held every Tuesday. See *id.* Once a number is reserved, only that dealership can fill that slot. See *id.* The dealership has until 11:00 a.m. on the Monday prior to the sale to cancel the reservation. See *id.* If the numbers are not cancelled at that time, the dealership is charged a $25.00 "No Show" fee. See *id.* The dealership is responsible

for marking each unit with their correct Auction I.D. number and lane where the unit is to run.  See *id.*  On or about the day of the auction, the transferor/seller will sign the certificate of title and leave the transferee/buyer's name blank.  See *id.*  The transferor/seller will deliver the title to AAA within ten (10) days of the auction sale.  See *id.*

A dealer has to complete a Floorplan Application and obtain approval from the Floorplan Department to participate in AAA's Floorplan Program.  See *id.*  Pursuant to AAA's Floorplan, after becoming the highest bidder at the auction, the dealer is required to submit the "buy slips" to AAA's Floorplan Department on the day of the auction to obtain possession of the vehicle.  See *id.*  The dealer has thirty (30) days from the date of the auction to pay for the vehicles that are subject to the Floorplan.  See *id.*  If a dealer does not pay for the vehicles in full within thirty (30) days from the date of the auction, they are required to submit a check for the Floorplan fee to continue possession of the vehicles for an additional thirty (30) days.  See *id.*  All vehicles are to be paid off no later than ninety (90) days from the date of the auction.  See *id.*  Before AAA delivers the certificate of title for a vehicle, a dealer is required to stop in the Floorplan office and pay AAA the following: the auction price for the vehicle, buy fee and the Floorplan fees.  See *id.*  Upon receipt of the check for the aforementioned amount, AAA will deliver the title to the dealer.  See *id.*

AAA has approximately 145 active dealers for its Floorplan.  See *id.*  A dealer will have somewhere between 1 to 116 vehicles with AAA's Floorplan.  See *id.*  On an average week, there are approximately 150 to 200 vehicles at an auction that become a part of the Floorplan.  See *id.*  Right now there are currently 1,758 vehicles outstanding in AAA's Floorplan.  See *id.*  Due to the enormous volume of vehicles that are part of the Floorplan, it is not feasible for AAA to place its name or lien on every certificate of title.  See *id.*  Such a process would burden the Ohio Bureau of Motor Vehicles.  See *id.*  Instead, AAA allows the dealer to obtain possession of the used vehicles on the day of the auction and AAA holds possession of the certificate of title.  See *id.*  AAA will then deliver the certificate of title for a vehicle after the dealer pays AAA for the used vehicle.  See *id.*

Occasionally, a dealer will become "out-of-trust" with the Floorplan by not making the required payments to AAA (including failure to pay once a vehicle has been sold) or continues to maintain possession of the vehicle past the ninety (90) day period.  See *id.*  When a dealer becomes "out-of-trust," AAA will put the title in the dealer's name and place its lien on the title to prevent the dealer from fraudulently obtaining a duplicate title.  See *id.*  In the event the State of Ohio revokes a dealer's license, the Bureau of Motor Vehicles will not allow that dealer to transfer any titles as of the date of the revocation.  See *id.*  However, AAA is able to transfer the title as a lien holder.  See *id.*

In the present matter, Courtesy had previously entered into a Floorplan Agreement with AAA which allowed Courtesy to obtain possession of the used vehicles on the day of the auction.  See *id.*  At all times, AAA has retained possession of the certificate of titles.  Courtesy failed to pay AAA according to the FloorPlan arrangement and became "out-of-trust."  See *id.*  Since Courtesy was "out-of-trust," AAA put the title in Courtesy's name and noted its liens on the titles of each vehicle.  See *id.*  To date, AAA has never delivered the certificate of titles to Courtesy.  See *id.*  Courtesy currently owes AAA for 54 vehicles, of which 24 are part of this lawsuit.  See *id.*  Unbeknownst to AAA, Courtesy arranged for Wachovia to provide financing to consumers for 24 of the Floorplan vehicles and Courtesy gave the consumers possession of these vehicles.  There are several consumer complaints pending against Courtesy and it is foreseeable that the State of Ohio may revoke Courtesy's dealer license.

**II.  Law and Argument**

The purpose of a preliminary injunction is to preserve the status quo of the parties pending a final adjudication of the merits of a case.  *Yudin v. Knight Industries Corp*. (1996), 109 Ohio App.3d 437, 439.  When deciding a request for preliminary injunction, the court must consider whether:

> (1) the moving party has shown a substantial likelihood that it will prevail on the merits of its underlying substantive claim; (2) the moving party will suffer irreparable harm if the injunction is not granted; (3) issuance of the injunction will not harm third parties; and (4) the public interest would be served by issuing the preliminary injunction.

*Sinoff v. Ohio Permanente Med. Group, Inc*., 146 Ohio App.3d 732, 741.  The party requesting the preliminary injunction must establish all four elements by clear and convincing evidence. *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div*. (1996), 109 Ohio App.3d 786, 790.

**A.  Wachovia will not Prevail on the Merits**

**1)  Ohio's Certificate of Title Act Applies in this Case**

Wachovia's reliance on *Heartland Bank v. National City Bank* (2007), 171 Ohio App.3d 132, a case from the Tenth District Court of Appeals, is misguided as the instant action is not governed by the Uniform Commercial Code ("UCC") and is not about which party's security interest has priority.  Rather, this case rests entirely on the issue of ownership of motor vehicles and must be resolved by

applying Ohio's Certificate of Title Act ("OCTA") and O.R.C. § 4505.181, which is also known as the Title Defect Rescission Fund ("TDR Fund").

### a) The OCTA is clear and unambiguous

O.R.C. § 4505.03 provides, in relevant part, that;

> No person * * * shall **sell or otherwise dispose** of a motor vehicle without **delivering** to the buyer or transferee of it a **certificate of title** with an assignment on it as is necessary to show title in the buyer or transferee; nor shall any person * * * buy or otherwise acquire a motor vehicle without obtaining a certificate of title for it in the person's name. (Emphasis added).

O.R.C. § 4505.04(A) sets forth the criteria for ownership of a motor vehicle:

> No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.

Applying Ohio law and O.R.C. § 4505.05 to resolve an issue of ownership of a motor vehicle, The Northern District of Ohio Bankruptcy Court found that:

> ". . . the directive of § 4505.04 is clear and unambiguous. In both paragraphs (A) and (B) of § 4505.04 it is provided that, unless evidenced by a certificate of title, no person shall acquire nor may a court recognize the '*interest* of any person in or to any motor vehicle. . . .' (emphasis added). This directive is mandatory, not permissive, beginning with the imperative that 'no court shall recognize the right . . .' (emphasis added). See *Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917*, 65 Ohio St.3d 532, 534, 605 N.E.2d 368 (1992) ("the word 'shall' denotes that compliance with the commands of that statute is mandatory."). Equally important, the statute makes no distinction or qualification on the types of "interests" that are not to be recognized - All interests are not to be recognized." *In re Caddarette* (2006), 362. B.R. 829, 833.

The court in *Caddarette* went on to recognize that the Ohio Supreme Court in *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513, 519, held that § 4505.04 was intended to apply to litigation where the parties were rival claimants to title and absolutely governed disputes involving competing claims of ownership of motor vehicles. *Id.* at 836. Based on the rationale of the statute's plain meaning and *Saturn of Kings*, the court concluded that it was "but a small step to conclude

that the Ohio Supreme Court would now interpret O.R.C. § 4505.04 as absolutely controlling on issues of ownership as between rival claimants including that of judgment lien creditors. *Id.* at 836-7.

In the case at bar, the plain language of O.R.C. § 4505.03 shows that Courtesy has not been able to dispose of a motor vehicle because AAA has not delivered the certificate of title. Since this matter involves competing claims of ownership of motor vehicles and rival claimants of creditors concerning the ownership of a motor vehicle, O.R.C. § 4505.04 is absolutely controlling in this case. Moreover, the OCTA grants a unique status to whoever is in **possession** of a certificate of origin. (Emphasis added.) *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.* (2006), 110 Ohio St.3d 112, 116 quoting *Executive Coach Builders v. Bush Cook Leasing, Inc.* (1992), 81 Ohio App.3d 808 (citations omitted). O.R.C. § 4505.04 specifically requires a person to possess a certificate of title to claim ownership of the motor vehicle. *Id.* at 115. The OCTA contains no words of negotiability. *Id.* at 119 citing *Hardware Mut. Cas. Co. v. Gall* (1968), 15 Ohio St.2d 261 at 266. Finally, when determining competing claims of ownership of a motor vehicle, the OCTA controls over the UCC. *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.* (2006), 110 Ohio St.3d 112, 120 citing *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513; see also *First Merit Bank v. Angelini* (3rd Dist. Crawford Ct. App. 2004), 159 Ohio App.3d 179, 185. Based on the foregoing reasons, Wachovia will not be able to prove that it has a claim of ownership in the motor vehicles that surpasses AAA's claim as AAA has retained possession of the certificates of titles at all times.

**b)   The Legislative History of the OCTA supports AAA's Position**

The legislative purpose behind the enactment of the OCTA is to prevent the importation of stolen motor vehicles and thefts and frauds in the transfer of title of motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles. See *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.* (2006), 110 Ohio St.3d 112, 119 and *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 115; see also the 1937 Am.Sub.H.B. No. 514, enacting Ohio's first Certificate of Motor Vehicle Title Act, 117 Ohio Laws 373. The language of O.R.C. § 4505.04(A) has remained substantially unchanged since its enactment. See *FirstMerit Bank v. Angelini* (2004), 159 Ohio App.3d 179, 188 in which the Court found that the OCTA was created to protect bona-fide purchasers, but that does not mean that a dealer's creditor who has done everything within the Act should be left without recourse.

Based upon the clear language of O.R.C. § 4505.04(A), the legislative history of the OCTA, and the case law established by the Ohio Supreme Court, the OCTA should apply in this case. When

applying the OCTA in this matter, Wachovia will not prevail. Therefore, this Court should deny Wachovia's request for a preliminary mandatory injunction.

### 2) The Controlling Law in Ohio conflicts with Wachovia's position

The recent appellate case of Heartland Bank conflicts with long established case law in Ohio. For over fifty years Ohio has held that ownership of a motor vehicle can only be acquired by acquiring possession of the certificate of title to that vehicle. See e.g., *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.* (2006), 110 Ohio St.3d 112, 116, *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513; *First Merit Bank v. Angelini* (3rd Dist. Crawford Ct. App. 2004), 159 Ohio App.3d 179; *Mielke v. Leeberson* (1949), 150 Ohio St. 528; *Vdtri v. City of Cleveland* (1957), 167 Ohio St. 90. A detailed explanation of Ohio's controlling cases in the following paragraphs will show that Courtesy was never the lawful owner and therefore could not pass title to any third party.

#### a) AAA paid for the Vehicles and Retained Possession of the Titles

In *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, Saturn of Kings Auto Mall sold vehicles to Gallatin Auto Sales. Saturn delivered the vehicles to Gallatin but withheld the certificates of titles pending receipt of payment from Gallatin. Gallatin later attempted to sell the vehicles to Mike Albert Leasing, but failed to pay Saturn the proceeds so Saturn would not release the titles to Mike Albert Leasing. The Ohio Supreme Court ruled that since Saturn had retained possession of the certificates of titles, Gallatin was never the lawful owner of the vehicles and therefore could not lawfully pass title to Mike Albert Leasing. *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513,520.

Similarly, in *FirstMerit Bank v. Angelini*, the Third District Court of Appeals ruled that O.R.C. § 4504.04(A) governed a dispute between a dealer's secured creditor that had liens on vehicles and possession of certificates of titles, and a subsequent purchaser of a vehicle and the bank that financed the customer's retail purchase. See *FirstMerit Bank v. Angelini* (2004), 159 Ohio App.3d 179, 186. In the FirstMerit Case, Galion Building and Loan Bank provided floor plan financing to John Angelini Auto Sales. Galion perfected its security interest by filing a financing statement and taking possession of the certificates of title. Angelini Auto Sales sold the vehicles to consumers and FirstMerit Bank provided the financing for the transactions. After receiving funds from FirstMerit Bank for the consumer transactions, Angelini failed to forward payment to Galion Bank and Galion Bank refused to provide the titles to FirstMerit Bank. The Court ruled that since Galion has held possession of the certificate of title at all

times, that title and ownership did not pass to Angelini pursuant to Ohio Revised Code § 4505.04(A). *Id*. at 186-7.

The present situation is factually similar to that of *Saturn of Kings* and *FirstMerit Bank* as (1) the vehicles were delivered to the Courtesy entities while AAA has continued at all times to hold the certificates of title pending receipt of payment from Courtesy and (2) AAA entered into an agreement with Courtesy like Saturn of Kings and Galion Bank. Since AAA never delivered the certificate of titles to Courtesy and has held possession of the titles at all times, ownership did not pass to Courtesy. See e.g., *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513, 520; *First Merit Bank v. Angelini* (3rd Dist. Crawford Ct. App. 2004), 159 Ohio App.3d 179, 186. Thus, Courtesy cannot transfer to any third party that which it never owned. Accordingly, Wachovia will not succeed on the merits in this case.

### b) Courtesy Cannot Convey Valid Title to a Bona Fide Purchaser

In *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.*, the Ohio Supreme Court reviewed its prior decisions in *Commercial Credit Corp. v. Pottmeyer* (1964), 176 Ohio St. 1 and *Hardware Mut. Cas. Co. v. Gall* (1968), 15 Ohio St.2d 261 and held that a thief cannot convey valid title to a bona fide purchaser, which includes thefts by fraud or deception. *Id.* at 118-9. Moreover, the Court recognized that O.R.C. § 4505.17 does not define the word "stolen" and held that the statute contemplates all types of theft, irrespective of the method employed to accomplish the crime. *Id*. at 119. In light of the forgoing, Courtesy cannot convey a valid title to any third party purchaser as Courtesy committed fraud. In the case at bar, Courtesy knowingly misrepresented that it intended to pay AAA to obtain possession of the vehicles, and then attempted a transaction with a bona fide purchaser. In furtherance of its fraudulent conduct, Courtesy obtained the proceeds from the purchaser and/or purchaser's financer and intentionally unlawfully retained all the proceeds and failed to pay AAA for the vehicles. Based on the above, Wachovia does not have a valid claim as a creditor of an alleged bona fide purchaser. Consequently, Wachovia will fall short in establishing the grounds for a preliminary mandatory injunction.

### c) The TDR Fund will Protect Bona Fide Purchasers

The rationale from the Ohio Supreme Court in the *Nott* case is supported by the Ohio Legislature's enactment of O.R.C. § 4505.181 and O.R.C. § 1345.52. The TDR Fund may compensate a retail purchaser of a motor vehicle who suffers damages from a dealer who offers for sale or sells a used motor vehicle for which the dealer has not obtained a certificate of title. O.R.C. § 4505.181; see also the Ohio Attorney General's Opinion No. 2007-024, a copy of which is attached hereto and incorporated

herein as Exhibit "B". In the present situation where an alleged consumer is left with a defective title due to Courtesy's fraud, the consumer may receive compensation from the TDR Fund. The TDR Fund is budget neutral in that the Fund will be restored by all dealers paying into the Fund. See O.R.C. § 4505.181(G). The Fund also facilitates the sales of used motor vehicles, which stimulates the economy. Lastly, utilization of the Fund is cost effective because the amount owed to the dealer who is in possession of the title is significantly less than the amount the bank financed to a consumer. Therefore, it would benefit all parties to use the TDR Fund to cure the defect in the title and complete the transaction rather than rescind the transactions.

### d) *Heartland Bank v. National City Bank* does not apply to this Case

As previously mentioned in the preceding paragraphs, *Heartland Bank v. National City Bank* (2007), 171 Ohio App.3d 132, is not applicable to the case at bar because the primary issue is whether Courtesy acquired legal ownership of a motor vehicle. See *Id.* at 141 where the Tenth District Court of Appeals recognized that the *Saturn of Kings* case and *Angelini* case centered on competing claims of ownership. Moreover, the present case is factually distinguishable from *Heartland Bank* as the dealer, Dublin Auto, sold a vehicle to a consumer and Heartland Bank, the dealer's floor plan financer, designated itself as the first lien holder and then the consumer's financer as the second lien holder. In the instant case, (1) AAA has not sold the vehicle to a consumer; (2) AAA has not named Wachovia's name on the title; and, (3) AAA has not named a consumer on the title. To date, AAA has not recognized or ratified any transactions of Courtesy and maintains its position that Courtesy does not own the vehicles as Courtesy committed fraud. See Affidavit of Rick Wakefield, attached Exhibit A.

In addition, the applicable analysis in a case between a bona fide purchaser and a lien holder was found to be under O.R.C. § 4505.04, and not O.R.C. § 1302.42, as the issue centered on instruments evidencing title and ownership. See *Hoegler v. Hamper* (1992), 79 Ohio App. 3d 280, in which the Cuyahoga Court of Appeals held that "O.R.C. § 4505.04 applies to civil cases in which two or more parties contest an ownership interest in motor vehicles. In such cases, a certificate of title is required where a plaintiff asserts a right in a motor vehicle and where a defendant's defense or claim is based on an interest in the same automobile." *Id.* at 283. Moreover, in *Morris v. Erie-way, Inc.* (1994), 93 Ohio App. 3d 239, 243, the Cuyahoga Court of Appeals held that "the retention of a certificate of title is indicia of retained ownership and where the owner fails to assign and deliver the certificate of title to the purchaser, title does not pass." In the case at bar, AAA has retained possession of the certificates of titles; therefore Courtesy was never the lawful owner of the vehicles and therefore could not lawfully pass title to any third party. See e.g., *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio

St.3d 513, 520; *First Merit Bank v. Angelini* (3rd Dist. Crawford Ct. App. 2004), 159 Ohio App.3d 179, 186. Accordingly, this Court should deny Wachovia's request for an injunction as it will not prevail in this case.

### 3) There is no Agency Relationship between AAA and Courtesy

In paragraph 149 of Wachovia' Second Amended Complaint, Wachovia alleges that Courtesy is an agent of AAA, but such an argument is flawed as there is no evidence in this case that AAA had control over Courtesy or authorized Courtesy to act on its behalf. It is anticipated that Wachovia may rely on the case of *Bobby Layman Chevrolet, Inc. v. Spire Motor Co.* (4th Dist. Washington Ct. App. 2004), 157 Ohio App.3d 13, to argue that Courtesy is an agent for AAA. The *Layman* case is factually distinguishable as the dealer, Layman Chevrolet, specifically delivered the vehicles to McLuney Auto Auction and requested that McLuney sell the vehicles. This is not the present situation. It is important to mention that Wachovia has a Limited Agency Agreement with Courtesy where Wachovia authorized Courtesy to act on its behalf. See Plaintiff's Exhibit 3. Moreover, Wachovia even states in Paragraph 80 of its Second Amended Complaint that Courtesy breached the agency agreement between Wachovia and Courtesy.

An agency relationship is a contractual relationship created by an express or implied agreement between the parties. *Johnson v. Tansky Sawmill Toyota, Inc.* (1994), 95 Ohio App.3d 164, 167. The test is one of whether the principal has the right of control over the agent. *Amerifirst Savings Bank of Xenia v. Krug* (1999), 136 Ohio App.3d 468, 484. Furthermore, "in order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe that the agent possessed the necessary authority." *Leasing Corp. v. Chambers*, 152 Ohio App.3d 715, 738.

In the case at bar, there is no agency agreement between AAA and Courtesy. Instead, there is a FloorPlan, promissory note and security agreement between AAA and Courtesy in which Courtesy is to pay AAA for the Floor Plan vehicles. AAA has not held Courtesy out to the public as AAA's agent and AAA did not order Courtesy to sell any vehicles on behalf of AAA. There is also no evidence showing that AAA acted as a principal and exercised control over Courtesy. Lastly, chapter 4517 of the Ohio Revised Code concerning automobile dealers has specific guidelines which do not permit dealers to have an agency relationship with other automobile dealers. See e.g., O.R.C. §§ 4517.14, 4517.03 and 4517.24.

Based on the foregoing, Wachovia will not be able to prove by clear and convincing evidence that it will prevail on the merits in this case.

### B. Wachovia will not suffer irreparable harm

"Irreparable harm exists when there is a substantial threat of material injury which cannot be adequately compensated through monetary damages. . . . Such relief will be refused where the injury is so slight … where there is no appreciable damage . . . ." *TGR Ents., Inc. v. Kozhev*, 2006-Ohio-2915, quoting *Single Source Packaging, LLC v. Cain*, Miami App. No. 2003-CA-14, 2003-Ohio- 4718, at _33 (citation omitted).  In its motion, Wachovia specifically states that it will be harmed "if a customer defaults under the payment obligation" or "if a vehicle is wrecked." (Emphasis added).  Wachovia has not satisfied the requirement by clear and convincing evidence that it cannot be adequately compensated through monetary damages.  Accordingly, this Court should deny Wachovia's request for a Preliminary Mandatory Injunction.

### C. Issuance of the Injunction will cause Irreparable Harm

Wachovia's assertion that no harm will come from the injunction is wrong.  If this Court were to grant Wachovia's request for an injunction, the purpose of the OCTA and TDR Fund would be disregarded.  Likewise, the purpose of the OCTA would be frustrated by recognizing the existence of Wachovia's undisclosed interest (not recorded on the title) in the motor vehicle.  Consumers and industries in Ohio would lose the protection mentioned in the legislative history of the OCTA, and the case law established by the Ohio Supreme Court in *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.* (2006), 110 Ohio St.3d 112 and *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513.  As such, this Court must deny Wachovia's request for a mandatory preliminary injunction as it will cause irreparable harm and encourage litigation of claims that could not be directly substantiated from a certificate of title. See e.g., *In re Caddarette* (2006), 362. B.R. 829, 834 where the court questioned where would the litigation end:  "Should this Court, despite the directive of § 4505.04, recognize other undisclosed interests in motor vehicles such as that of co-owners, or lien holders, or even a purchaser?"  Based on the foregoing, this Court should not allow Wachovia's request as the injunction will cause irreparable harm.

### D. The Public Interest is Served by Denying Wachovia's Injunction

As previously mentioned, Wachovia fails to recognize the OCTA and the cases supporting it. Motor vehicles are distinct and different type of good and the OCTA was created separately from the Uniform Commercial Code. "To equate the sale of motor vehicles to that of a refrigerator or other household appliance would be to render the Certificate of Title Act meaningless." *First Merit Bank v. Angelini* (2004), 159 Ohio App.3d 179, 188. Again, there is a real potential that the issuance of the injunction would encourage litigation and false claims regarding titles to motor vehicles. Furthermore, the consumers may utilize the TDR Fund under O. R.C. 4505.181(A), which has compensated consumers in the past where the facts were similar to the current situation. See portions of the Ohio Attorney General Consumer Section's Annual Report for 2007 and 2008, a copy of which is attached hereto and incorporated herein as Exhibit "C." In light of the aforementioned, Wachovia's request for a preliminary mandatory injunction should not be granted as such a request is contrary to the interest of the public.

### III. Conclusion

In conclusion, Defendant, Akron Auto Auction, Inc., respectfully requests that the Court deny Plaintiff's request for a mandatory injunction as the Plaintiff has failed to prove by clear and convincing evidence that it will succeed on the merits of its case and suffer irreparable harm. As previously mentioned, Akron Auto Auction, Inc. has retained possession of the certificates of titles at all times and Courtesy was never the lawful owner of the vehicles; therefore, Courtesy could not lawfully pass title to any third party. Furthermore, the injunction would cause irreparable harm by undermining the OCTA and it would serve the public interest to uphold the OCTA and apply *Saturn of Kings*. Other relief is available through Ohio's Title Defect Rescission Fund. For the foregoing reasons, the Court should deny Plaintiff's request for a preliminary mandatory injunction.

Respectfully submitted,

/s/ Michael A. Thompson
Michael A. Thompson (#0016874)
4571 Stephen Circle N.W., Suite 130
Canton, OH 44718-3629
Tel: (330) 49905297 Fax: (330) 433-1313
Thompsonlaw@sssnet.com

/s/ James Collum
James Collum (#0070985)
4571 Stephen Circle., N.W., Suite 130
Canton, OH  44718
Telephone:  (330) 494-4877
Fax:           (330) 433-1313
jcollum@collumlawoffice.com
and


/s/ Deborah L. Koral
Deborah L. Koral (#0071921)
P.O. Box 44
Uniontown, OH  44685-0044
(330) 563-4545 phone/fax
debkoral@gmail.com



*Counsel for Defendant Akron Auto Auction, Inc.*


**CERTIFICATE OF SERVICE**


I hereby certify that a true and correct copy of the foregoing Memorandum was sent by electronic mail on this 18th day of May, 2009 to the following:


Via email:

Charles Butler, Attorney for Wachovia Dealer Services, Inc.
butler@fountaincitylaw.com

Michael Steel, Attorney for Courtesy Auto World of Alliance, Inc. and Courtesy C-P-D, Inc.
masteel@goldman-rosen.com

Scott D. Eickelberger, Attorney for Fink's Used Cars
Scott@kincaidlaw.com


/s/ Michael A. Thompson
Michael A. Thompson #0016874