**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON (AKRON)**

| | | |
|---|---|---|
| Wachovia Dealer Services, Inc. fka WFS Financial, Inc.<br><br>Plaintiff,<br><br>vs.<br><br>Courtesy Auto World of Alliance, Inc., et al.<br><br>Defendants. | ) | Case No. 5:09-cv-00323<br><br>Judge: Sara Lioi<br><br>**DEFENDANT AKRON AUTO AUCTION'S REPLY BRIEF TO PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

As a preliminary matter, Defendant, Akron Auto Auction, Inc., ("AAA"), notes that the proposed findings of fact and conclusions of law of Plaintiff Wachovia Dealer Services, Inc. ("Wachovia") is not structured with numbered paragraphs; therefore, it was difficult to reference. Nevertheless, AAA has tried to the best of its ability to follow the format and caption headings of Wachovia's brief and point to specific portions in this response.

## I. Introduction

AAA has refused to release the titles because it is the owner of the subject vehicles. This case rests entirely on the issue of ownership of motor vehicles and must be resolved by applying Ohio's Certificate of Title Act ("OCTA"). It is undisputed that Courtesy has not paid AAA for the subject vehicles and AAA has never relinquished the titles.[1] Since AAA has possessed the certificates of titles at all times, AAA is the owner of the vehicles.[2] Moreover, the record shows that AAA is not your typical floor plan lender. AAA's floor plan can be compared to a layaway plan in which AAA allowed Courtesy to have possession of the vehicles and Courtesy was required to pay AAA a floor plan fee to continue possession of the vehicles. When Courtesy completed payments for the vehicle, AAA would deliver the certificate of title. Courtesy cannot

[1] See Tr. Pgs. 139 and 141.
[2] Titles were delivered to AAA by the various sellers along with a power of attorney. AAA by having paid the sellers for the vehicles received an assignment of all rights to the vehicles. See Defendant's Exhibit L and Tr. Pg. 145.

transfer to any third party that which it never owned because Courtesy never paid AAA for the vehicles and AAA did not deliver the certificate of titles to Courtesy.

**II. Plaintiff Wachovia's Proposed Findings of Fact**

A. COURTESY DEALERSHIPS.

AAA does not dispute the fact that the Courtesy dealerships were closed; however, AAA notes that Wachovia's proposed finding of fact that the retail customers were "in and around Akron, Ohio" is not supported by any references to the record.

B. WACHOVIA.

AAA has no response to this particular section of Wachovia's brief.

C. AKRON AUTO AUCTION TRANSACTIONS IN DISPUTE.

With regard to the second and third sentence in the first paragraph of this section in Wachovia's brief, AAA asserts that the facts show that Courtesy attempted to acquire the vehicles at AAA's auction; however, Courtesy never owned the vehicles.[3] In addition, the third sentence should be disregarded as "ownership" is a legal question and not a finding of fact in the instant case.[4] A review of the transcript of the hearing in this case shows that Wachovia's representative, Mr. Cox, presented conflicting testimony as to who was the legal owner of the vehicles. At one point Mr. Cox testified that Courtesy was the owner,[5] then stated that the "legal owner would be Wachovia"[6] and then stated that the "owner would have the consumer's name on there as well."[7] When questioned by counsel for AAA, Courtesy's representative, Mr. Varner, admitted that he was not qualified to offer his opinion from a legal point of view as to who is the owner of a vehicle.[8] The Ohio Attorney General's representative, Mr. Sliwinski, offered no opinion as to the issue of ownership. AAA has always maintained the position that it is the owner of the subject vehicles according to O.R.C. §4505.04(A); *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.* (2006), 110 Ohio St.3d 112, 120 citing *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513; *First Merit Bank v. Angelini* (3rd

---

[3] The facts in the record reveal that Courtesy acquired ***possession*** of the vehicle on the day of the auction, but would not own the vehicle until AAA was paid in full and delivered the title to Courtesy. See Tr. Pgs. 79, 84, and 147-148.
[4] O.R.C.§4505.04(A) sets forth the criteria for ownership and no person shall be recognized as the owner of a motor vehicle until such person has acquired possession of the certificate of title to that vehicle.
[5] See Exhibit 1 and Tr. Pgs. 33-34.
[6] See Tr. Pg. 39.
[7] See Tr. Pg. 40.
[8] See Tr. Pg. 94.

Dist. Crawford Ct. App. 2004), 159 Ohio App.3d 179, 185 and *In re Caddarette* (2006), 362. B.R. 829, 833.

With regard to the last paragraph in this section, Wachovia admits that the titles were not delivered to Courtesy but completely ignores the requirement of delivery to establish ownership as set forth in O.R.C. §4505.04(A) and the controlling Ohio cases cited in AAA's brief. Moreover, Footnote 20 in Wachovia's brief does not accurately refer to the transcript as there is no testimony on pages 121-122 that demonstrates AAA asserted lien rights.

D. AKRON FLOOR PLAN LENDING AGREEMENT.

AAA notes that most of the first paragraph in this section of Wachovia's brief contains allegations and assertions that are not findings of fact. Furthermore, Wachovia points to the exhibits of AAA and attempts to draw conclusions concerning the UCC when the transcript does not support these allegations.[9] The fact is that AAA asserts that no ownership has passed to Courtesy. It is also important to clarify that Courtesy was the highest bidder at the auction and attempted to purchase the vehicles by submitting the "buy slips" to AAA's Floorplan Department on the day of the auction to obtain possession of the vehicles and AAA would not deliver the certificate of title for a vehicle until Courtesy has paid AAA for the vehicle, a fact known to Courtesy.[10]

Turning to the last sentence on page 5 of Wachovia's brief, Wachovia wrongfully makes a legal conclusion that AAA has a "duty" to conduct floor plan audits.[11] There is no evidence in the record as to who such alleged duty is owed or any legal authority cited by Wachovia of such a duty imposed by law on AAA. The testimony at the hearing shows that Courtesy was current on its monthly floor plan payments and that AAA conducted an audit when the vehicles were past the 90 day time period.[12]

In addition, the testimony of Rick Wakefield (as cited by Wachovia in Footnote 42, page 6) does not support the claimed findings of fact. On page 129 of the Transcript, Rick Wakefield admitted that there was nothing in Section 4.0 of AAA's Security Agreement that authorized AAA to place a lien on a title. Rick Wakefield then testified that AAA had a power of attorney

[9] Rick Wakefield, the representative of AAA, testified that he did not rely on the UCC when he put AAA's liens on the titles and he took such action to protect AAA's interest in the vehicles. See Tr. Pgs. 136-137.
[10] See Tr. Pg. 83 and Defendant's Exhibit L, affidavit of Rick Wakefield.
[11] The evidence in the record reveals that most of the vehicles were sold within a day or so of Courtesy obtaining possession of the vehicle at the auction. See Tr. Pg. 84.
[12] See Tr. Pgs. 125 and 151.

from every floor plan dealer that authorizes AAA to place liens on titles and explained situations in which AAA uses the power of attorney to protect AAA's interest in the vehicle.[13] The last sentence in Plaintiff Wachovia's brief referencing footnote 43 is completely inaccurate as Richard Varner provided testimony on page 80 of the Transcript, not Rick Wakefield. Moreover, Richard Varner had no knowledge as to whether AAA relied on UCC provisions and a floor plan agreement.[14]

Page 7 of Wachovia's brief specifically states that Wachovia "anticipates more customers will stop paying since they cannot get titles." Such statement is at best speculative and not supported by the record of the case at bar as Wachovia produced no documents to show any of the loans were in default and the reasons for the alleged default.[15] In fact, Wachovia's representative, Lawrence Cox, admitted that some of the consumer loans contained high interest rates because of the risk that Wachovia assumes in loaning the money to the consumer.[16]

E. 2006 KIA SPORTAGE

Although this vehicle does not involve AAA, the last sentence of this paragraph is particularly telling as Wachovia acknowledges that delivery of the certificate of title is required in order to claim an interest in the vehicle. Hence, Wachovia has agreed with AAA's position that delivery and possession of the title are two key elements in establishing a claim of ownership in the subject vehicles.

**III. Plaintiff Wachovia's Conclusions of Law**

A. THERE IS NOT A STRONG LIKELIHOOD THAT WACHOVIA WILL SUCCEED

***1. O.R.C. Chapter 4505 Controls in this Matter***

Wachovia has continued to take the position that the UCC applies and states on page 8 of its brief that "a key issue is whether the Court should apply Ohio's version of UCC Article 9." As explained in AAA's brief, Wachovia needs to stop riding the UCC train and focus on the central issue of competing claims of ownership. Contrary to Plaintiff Wachovia's assertion on page 9 of

[13] See Tr. Pgs. 142-144 in which Rick Wakefield testified that AAA has used its power of attorney to protect AAA's interest in the vehicle when a dealer is in trouble such as the following: (a) in cases where the buyer or seller at the auction loses their dealer license AAA uses the power of attorney to transfer the title at the Bureau of Motor Vehicles, (b) AAA uses the power of attorney to note its lien on the title to prevent the dealer from fraudulently obtaining a duplicate title, (c) AAA uses the power of attorney when a dealer goes out of business to repossess and resell the vehicle, and, (d) in cases where the vehicle has been impounded AAA uses the power of attorney to redeem the vehicle.

[14] See Tr. Pg. 91.

[15] See Tr. Pg. 47.

[16] See Tr. Pgs. 47-48.

its brief, this case is factually similar to *Saturn of Kings* as Gallatin (Courtesy) took possession of the vehicles and agreed to pay Saturn and Cronin (AAA) a specific price for the vehicles. Likewise, Saturn and Cronin (AAA) retained the certificates of title pending payment from Gallatin (Courtesy).

Wachovia's has made a poor attempt to distinguish the present case from *Saturn of Kings* on page 10 of its brief and has falsely stated that 'it is undisputed that AAA never owned the vehicles." However, throughout its brief AAA has disputed that Courtesy, Wachovia or any third party are owners of the vehicles as the requirements of O.R.C. Chapter 4505 have not been satisfied. Indeed it is undisputed that AAA has retained possession of the certificate of titles and has not delivered the titles to Wachovia, Courtesy or any third party.[17] The record in this case presents an abundance of evidence that Courtesy agreed to the outright purchase the vehicles at the auction based on the "buy slips," that the titles were not delivered to Courtesy, but were retained by AAA at all times and were put in Courtesy's name with AAA's lien noted when Courtesy failed to pay AAA during the 90 day time period.[18] AAA admits that it retained possession of the certificates of title and noted its lien to avoid the problems discussed in footnote 13 above.[19] AAA accurately asserts that O.R.C. § 4505.04 controls over the UCC in this case since this matter involves competing claims of ownership of motor vehicles and rival claimants of creditors concerning the ownership of a motor vehicle.[20]

***2. Pursuant to O.R.C. Chapter 4505 and Ohio case law, ownership of a motor vehicle is determined by acquiring possession of the certificate of title.***

Even the case authority that Wachovia cites (page 12), *DaimlerChrysler Services*, referenced the *Saturn of Kings* case and recognized that "the logical effect of the [OCTA] is to require that a lien-holder possess title *in addition* to otherwise having a basis for contesting a secured party's first priority claim."[21] This Court went on to state that compliance with the OCTA was necessary.[22] AAA notes that both the *DaimlerChrysler* and *Heartland Bank* cases are factually

[17] See Tr. Pgs. 56-57.
[18] See Defendant's Exhibit L, affidavit of Rick Wakefield and Tr. Pgs. 125, 136, 147-148, and 151.
[19] *Id. see also footnote 13, supra.*
[20] See *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc. (2001), 92 Ohio St.3d 515, syllabus.*
[21] *DaimlerChrysler Services North America, LLC v. Labate Chrysler, Jeep Dodge, Inc.* (2006), No. 4:05-CV-2848, at 3.
[22] *Id.*

distinguishable from the present case as this matter involves completing ownership claims which was not at issue in the cases cited by Wachovia.[23]

What Wachovia has completely ignored is that O.R.C. §4505.03 requires a person who is selling or otherwise disposing of a motor vehicle to deliver to the buyer or transferee the certificate of title with an assignment on it to establish or show title in the buyer or transferee and that pursuant to O.R.C. §4505.04, no person shall acquire nor may a court recognize the interest of any person in or to any motor vehicle unless such person has acquired possession of the certificate of title to that vehicle. The Third District Court of Appeals in *First Merit Bank v. Angelini*, 159 Ohio App.3d 179, followed the Ohio Supreme Court and OCTA when it ruled that since Galion has held possession of the certificate of title at all times, that title and ownership did not pass to Angelini.[24] The present situation is factually similar to that of *Saturn of Kings* and *FirstMerit Bank* as (1) Courtesy was allowed to obtain possession of the vehicles on the day of the auction while AAA has continued at all times to hold the certificates of title pending receipt of payment from Courtesy and (2) AAA entered into an agreement with Courtesy and was not paid like Saturn of Kings or Galion Bank. In the case at bar, ownership did not pass to Courtesy because AAA never delivered the certificate of titles to Courtesy and AAA has held possession of the titles at all times.[25]

***3. Courtesy committed fraud and cannot convey a valid title to any third party***

In *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.*, the Ohio Supreme Court reviewed its prior decisions in *Commercial Credit Corp. v. Pottmeyer* (1964), 176 Ohio St. 1 and *Hardware Mut. Cas. Co. v. Gall* (1968), 15 Ohio St.2d 261 and held that a thief cannot convey valid title to a bona fide purchaser, which includes thefts by fraud or deception. *Id.* at 118-9. Moreover, the Court recognized that O.R.C. § 4505.17 does not define the word "stolen" and held that the statute contemplates all types of theft, irrespective of the method employed to accomplish the crime. *Id*. at 119. In light of the forgoing, Courtesy cannot convey a valid title to any third party purchaser as Courtesy committed fraud. In the case at bar, Courtesy knowingly misrepresented that it intended to pay AAA to obtain possession of the vehicles, and then attempted to sell the

[23]See page 4 of *DaimlerChrysler, supra,* where the Court stated that no one contests ownership and the first footnote in *Heartland Bank v. National City Bank* (2007), 171 Ohio App.3d 142 where the Tenth District Court of Appeals stated that ownership was not at issue.

[24] *FirstMerit Bank, supra,* at 186-7.

[25] Defendant AAA notes that although Plaintiff Wachovia refers to O.R.C. §4505.13 on page 13 of its brief, such provision relates to the automated title processing system and is not applicable to the facts in the case at bar.

vehicles to bona fide purchasers.[26] In furtherance of its fraudulent conduct, Courtesy obtained the proceeds from the purchaser and/or purchaser's financer and intentionally and unlawfully retained all the proceeds and failed to pay AAA for the vehicles. Based on this fraudulent conduct, Wachovia does not have a valid claim as a creditor of an alleged bona fide purchaser. Consequently, Wachovia will fall short in establishing the grounds for a preliminary mandatory injunction.

Wachovia has also stated on page 16 of its brief that AAA no longer has a cognizable interest in the vehicles; however, Wachovia's perception of interest is misguided. As stated time and time again, AAA retains the ownership interest in the vehicles without any ownership or security interest held by Courtesy, any purchaser from Courtesy, or Wachovia financing any purchase from Courtesy, until such time as AAA delivers the certificate of title for the vehicles to any other party.[27] Furthermore, Wachovia claims that AAA has a remedy to "obtain the proceeds from Courtesy," but Wachovia fails to mention that Wachovia also has a remedy by demanding a refund from Courtesy.[28]

***4. There is no Agency Relationship between AAA and Courtesy***

Wachovia's concept of agency rests entirely on the theory that Courtesy is an agent of AAA because Courtesy can sell vehicles to retail customers and pay AAA for the sale of these vehicles. Such argument is without legal basis as the law establishing agency requires (1) that the principal holds the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe that the agent possessed the necessary authority.[29] No agency relationship existed between AAA and Courtesy as the facts before the Court established that AAA had no control over Courtesy and did not authorize Courtesy to conduct business on behalf of AAA.[30]

---

[26] As shown in Plaintiff's Exhibit 1 and Defendant's Exhibit I Courtesy sold some vehicles within two to three days of taking possession, received payment for the vehicles and never paid AAA and continued to bid on and take possession of the vehicles from AAA.

[27] See O.R.C. §4505.03 and O.R.C. §4505.04; see also *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.* (2006), 110 Ohio St.3d 112, 116 quoting *Executive Coach Builders v. Bush Cook Leasing, Inc.* (1992), 81 Ohio App.3d 808 (citations omitted); *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513; *In re Caddarette* (2006), 362. B.R. 829, 833; *First Merit Bank v. Angelini* (3rd Dist. Crawford Ct. App. 2004), 159 Ohio App.3d 179, 185.

[28] See Tr. Pg. 43.

[29] *Leasing Corp. v. Chambers*, 152 Ohio App.3d 715, 738.

[30] See Tr. Pgs. 92, and 94-5.

The case *Mutual Finance Co. v. Kozoil* (1961), 172 Ohio St. 265, as cited by Wachovia (page 17), is distinguishable from the case at bar for the following reasons: (1) it was decided forty years ago and the *Saturn of Kings* case is now controlling; (2) AAA was unaware that Courtesy was "out-of-trust" at the time Courtesy attempted to sell the vehicles to consumers; and (3) at no time did AAA participate in or arrange any alleged sale to a consumer. In *Mutual Finance Co*., unlike the present case, the floor plan lender knew that the dealer was "out-of-trust" for almost a year.

While there is no agency relationship between AAA and Courtesy, Wachovia did have a written limited agency agreement with Courtesy and that Wachovia knew that Courtesy was not delivering the titles for the vehicles in September 2008 and continued to provide financing to Courtesy until November 2008.[31] Furthermore, the case of *Bobby Layman Chevrolet, Inc. v. Spire Motor Co.* (4th Dist. Washington Ct. App. 2004), 157 Ohio App.3d 13, is factually distinguishable from the instant case as the dealer, Layman Chevrolet, specifically delivered the vehicles to McLuney Auto Auction and requested that McLuney sell the vehicles for Layman.

Based on the foregoing, this Court must conclude that Plaintiff Wachovia will not be able to prove by clear and convincing evidence that it will prevail on the merits in this case.

B. WACHOVIA WILL NOT SUFFER IRREPARABLE HARM

Again, when the Court reviews the record of this Case, the Court will find no evidence produced by Wachovia that showed the loans were in default and the reasons for any alleged default. Moreover, Wachovia admits such lack of evidence on page 19 of its brief as it "may have difficulty in repossessing and selling a vehicle if a customer defaults."(Emphasis added). In addition, Wachovia argues that it cannot be compensated through recourse against Courtesy; however, Wachovia's Exhibit 1 shows that Wachovia is currently receiving compensation from its consumers. In addition, Mr. Sliwinski testified that the consumers may seek restitution from the TDR Fund since they have not received the titles within 40 days, which would result in Wachovia being paid on its loans.[32] Accordingly, this Court must conclude that Wachovia has not proven the necessary requirement of irreparable harm by clear and convincing evidence.

C. ISSUANCE OF THE INJUNCTION WILL CAUSE SUBSTANTIAL HARM TO AAA

[31] See Exhibit 3 and Tr. Pgs. 20, 55.
[32] Tr. Pgs. 98 and 112.

Issuance of the injunction will cause substantial harm to AAA as AAA would have to relinquish the certificate of titles and would lose its claim of ownership to the vehicles. Moreover, Ohio's new, used and leasing dealers and automobile auctions will be at an economic and competitive disadvantage and governmental entities like the clerks of courts will be adversely affected if this Court were to grant Wachovia's request for an injunction.[33] Based on the foregoing, this Court should not allow Wachovia's request as the injunction will cause irreparable harm to AAA and thwart the purpose of the OCTA and TDR Fund.

D. IT WILL NOT SERVE THE PUBLIC INTEREST TO ISSUE THE INJUNCTION

AAA has relied on the *Amicus Curiae Brief* filed by the Ohio Auto Dealers Association in the *Saturn of Kings* case in support of its position that the public interest is not served if the Court were to grant Wachovia's request. The legislative purpose behind the enactment of the OCTA would also be disregarded if the Court issued the injunction. The OCTA was designed to prevent the importation of stolen motor vehicles and thefts and frauds in the transfer of title of motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles. See *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.* (2006), 110 Ohio St.3d 112, 119 and *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 115; see also the 1937 Am.Sub.H.B. No. 514, enacting Ohio's first Certificate of Motor Vehicle Title Act, 117 Ohio Laws 373. The language of O.R.C. § 4505.04(A) has remained substantially unchanged since its enactment. See *FirstMerit Bank v. Angelini* (2004), 159 Ohio App.3d 179, 188 in which the Court found that the OCTA was created to protect bona-fide purchasers, but that does not mean that a dealer's creditor who has done everything within the Act should be left without recourse. The issuance of the injunction would result in the consumers and the motor vehicle industry in Ohio losing the protection mentioned in the legislative history of the OCTA.

Wachovia has failed to prove by clear and convincing evidence that the public interest would be served if the Court were to issue the injunction. In reviewing the transcript of the hearing, the testimony revealed that the consumers have obtained additional 30 day tags from the Ohio

[33]See page three of the *Amicus Curiae* Brief filed by the Ohio Auto Dealers Association ('OADA") in *Saturn of Kings*, *supra*, where the OADA stated that the wholesale automobile auction industry has operated upon the simple premise that "when a vehicle is purchased at a wholesale auction the entity making the purchase may leave with physical possession of the vehicle and the certificate of title to the vehicle is not surrendered until payment for the purchase is tendered." If the Court were to grant the injunction it would radically change the system which has worked efficiently in Ohio since the enactment of the OCTA.

Attorney General and dealer tags from Courtesy so they can continue to use their vehicle.[34] Moreover, the record contained no evidence that showed the consumers have refused to make monthly payments because they have been unable to obtain the certificate of title. Furthermore, the TDR Fund was enacted by the Ohio Legislature to compensate the consumers who do not receive a title for a motor vehicle within forty (40) days from the purchase contract.[35] The record reveals that consumers may utilize the TDR Fund under O. R.C. §4505.181(A) since the TDR Fund has been used in the past to compensate lien holders and consumers.[36] Based on the foregoing, this Court must conclude that Wachovia has not established by clear and convincing evidence that the issuance of the injunction will serve the public's interest.

**IV. Conclusion**

In conclusion, Defendant, Akron Auto Auction, Inc., respectfully requests that the Court deny Wachovia's request for a mandatory injunction as the Wachovia has failed to prove by clear and convincing evidence that it will succeed on the merits of its case and suffer irreparable harm. As previously mentioned, Akron Auto Auction, Inc. has retained possession of the certificates of titles at all times and Courtesy was never the lawful owner of the vehicles; therefore, Courtesy could not lawfully pass title to any third party. Furthermore, granting the injunction as sought by Wachovia would undermine the legislative scheme adopted by the Ohio legislature and supported by the Ohio Supreme Court, which would cause irreparable harm to the consumers and the motor vehicle industry.[37]

---

[34] See Tr. Pg. 87.
[35] See O. R.C. §4505.181(A) and Tr. Pg. 98.
[36] See Tr. Pg. 148.
[37] A part of the protection afforded under the legislative scheme is found in the Ohio Title Defect Rescission Fund.

Respectfully submitted,

/s/ Michael A. Thompson
Michael A. Thompson (#0016874)
4571 Stephen Circle N.W., Suite 130
Canton, OH 44718-3629
Tel: (330) 49905297 Fax: (330) 433-1313
Thompsonlaw@sssnet.com

/s/ James Collum
James Collum (#0070985)
4571 Stephen Circle, N.W., Suite 130
Canton, OH 44718
Telephone: (330) 494-4877
Fax: (330) 433-1313
jcollum@collumlawoffice.com

and

/s/ Deborah L. Koral
Deborah L. Koral (#0071921)
P.O. Box 44
Uniontown, OH 44685-0044
(330) 563-4545 phone/fax
debkoral@gmail.com
*Counsel for Defendant Akron Auto Auction, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Post Hearing Brief was sent by electronic mail on this 9th day of June, 2009 to the following:

Via email:

Charles Butler, Attorney for Wachovia Dealer Services, Inc.
butler@fountaincitylaw.com

Michael Steel, Attorney for Courtesy Auto World of Alliance, Inc. and Courtesy C-P-D, Inc.
masteel@goldman-rosen.com

/s/ Michael A. Thompson
Michael A. Thompson #0016874